IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA JULIA NAVARRO | : CIVIL ACTION |
| v. | : |
| MICHAEL J. ASTRUE, | : NO. 09-1788 |
| Commissioner of Social Security | : |

**REPORT AND RECOMMENDATION**

M. FAITH ANGELL  March 25, 2010
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

This is an action brought pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act. Presently before this court for consideration is Plaintiff's Motion in Support of Request for Review and brief in support thereof [Docket Entry No. 6] and Defendant's Response thereto [Docket Entry No. 11].[1]

On January 21, 2010, counsel presented oral argument. For the reasons that follow, I recommend that the relief requested in Plaintiff's Brief be granted and this matter be remanded for further administrative proceedings consistent with this Report and Recommendation.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on September 11, 1963. *Tr.* a 117-122, 126-128. She has less than a high school education, having finished the tenth grade. *Tr.* at 63. Plaintiff has not engaged in substantial gainful activity at any time since February 2, 2006, her SSI application date. *Tr.* at 66.

---

[1] Hereinafter "Plaintiff's Brief" and "Defendant's Response" respectively.

Ms. Navarro protectively filed an application for SSI benefits on February 2, 2006, alleging disability beginning on April 1, 2003.[2] *Tr.* at 117-122. The Commissioner denied Plaintiff's claim initially. Ms. Navarro then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 7, 2008, before ALJ Javier A. Arrastia in Philadelphia, Pennsylvania. Plaintiff was present and represented by counsel at this hearing. In addition to Plaintiff's testimony, testimony was taken from Juanita Broaddus, Ms. Navarro's case manager at New Direction for Women, Inc. and from Bruce B. Martin, an impartial vocational expert ("VE"). Though a Spanish interpreter was present, Plaintiff was able to testify without his assistance.

On May 14, 2008, ALJ Arrastia issued a decision denying Ms. Navarro's claim for benefits, based upon a finding that she was not disabled as that term is defined in the Social Security Act. *Tr.* at 27. Plaintiff's counsel filed an appeal on her behalf, requesting review of the ALJ's decision by the Appeals Council. On March 10, 2009, the Appeals Council denied Ms. Navarro's request for review and adopted the ALJ's decision as the final decision of the Commissioner. *Tr.* at 5-8.

On April 28, 2009, Plaintiff's counsel filed an action in this Court, seeking review of the adverse decision. Respondent answered the complaint; Plaintiff filed a motion in support of request for review, and Defendant responded. The matter has been referred to me by the Honorable Edmund V. Ludwig for a Report and Recommendation.

### III. SOCIAL SECURITY DISABILITY LAW

A. **Disability Determination**

The Social Security Act authorizes several classes of disability benefits, including SSI

---

[2] Ms. Navarro previously filed an application for Title XVI benefits on August 2, 2001, but the unfavorable determination based on this application is not subject to reopening as it is too remote, and the ALJ's finding herein was not favorable to Plaintiff. *Tr.* at 19.

2

benefits. In order to qualify for SSI benefits, a person must be "disabled" under the Social Security Act and the accompanying regulations.

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); 42 U.S.C. §423(d)(1)(1982). A claimant can establish a disability in either of two ways: (1) by producing medical evidence that one is disabled *per se* as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2000), or (2) by demonstrating an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. §423(d)(2)(A).

The Commissioner's regulations provide a five (5) step sequential evaluation process for determining whether or not a claimant is under a disability. 20 C.F.R. §404.1520. Step 1 states that an individual who is working will not be found to be disabled regardless of medical findings. 20 C.F.R. §404.1520(b). Step 2 involves evaluating severe impairments. 20 C.F.R. §404.1520(c). Step 3 requires determining whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1. 20 C.F.R. §404.1520(d). Step 4 states that if an individual is capable of performing past relevant work, he will not be found to be disabled. 20 C.F.R. §404.1520(e). Step 5 requires that if an individual cannot perform past relevant work, other factors must be considered to determine if other work in the national economy can be performed. 20 C.F.R. §404.1520(f). *See e.g. Ramirez v. Barnhart,* 372 F.3d 546, 550-51 (3d Cir.

2004).

It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. *Plummer*, 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ's conclusions must be accepted unless they are without basis in the record. *Torres v. Harris*, 494 F.Supp. 297, 301 (E.D.Pa. 1980), *aff'd.*, 659 F.2d 1071 (3d Cir. 1981).

### B. Judicial Review of Disability Decisions

The role of this court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision. *Fargnoli*, 247 F.3d at 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence. *Id.*

It is not the role of the Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ. *See e.g. Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Upon appeal to this Court, the Secretary's factual determinations, if supported by substantial evidence, shall be conclusive. The conclusiveness applies both to findings of fact and to inferences reasonably drawn from that evidence. *See Fargnoli*, 247 F.3d at 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

### IV. THE ALJ'S DECISION

The ALJ received medical evidence, heard Ms. Navarro's testimony and received testimony

from a VE and from Plaintiff's case manager. Proceeding through the five-step evaluation process, the ALJ determined that Plaintiff is a younger individual with a limited education. She does not have past relevant work, and thus, satisfied the requirements of Step 1 of the sequential evaluation. *Tr.* at 26.

At Step 2, the ALJ found that Ms. Navarro has the following severe impairments: a back impairment from degenerative disc disease and a major depressive disorder without psychotic features. The ALJ further found that the above impairments cause significant limitation in Plaintiff's ability to perform basic work activities. *Tr.* at 21.

At Step 3, the ALJ concluded that Ms. Navarro's lumbar spine impairment "does not meet Listing 1.04A because it is not associated with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and a positive straight leg raising test (sitting and supine). This impairment is not associated with lumbar spinal stenosis resulting in pseudoclaudication manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively. Thus, Listing 1.04C is also not met". *Tr.* at 22-23.

The ALJ further determined that Plaintiff's mental impairment "does not meet or medically equal the criteria of listing 12.04". *Tr.* at 23. He explained,

> In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes

within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the [plaintiff] has mild restriction. In social functioning, the [plaintiff] has moderate difficulties. With regard to concentration, persistence or pace, the [plaintiff] has moderate difficulties. As for episodes of decompensation, the [plaintiff] has experienced no episodes of decompensation.

Because the [plaintiff's] mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no indication that the [plaintiff] has a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and either: repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the [plaintiff] to decompensate; or a current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

The limitations identified in the "paragraph B" and "paragraph C" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.

*Tr.* at 22-23.

At Step 4, the ALJ reviewed the entire record and determined that Ms. Navarro retains the residual functional capacity ("RFC") "to perform light work . . . except she is limited to performing simple, routine, repetitive work. She should have no contact with the public and work primarily on her own, not as part of a team". *Tr.* at 24.

At Step 5, the ALJ found, considering Ms. Navarro's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. Examples of such occupations include: commercial cleaner (light and unskilled) and an inspector (light and unskilled). The ALJ determined, therefore, that a finding of not disabled is appropriate. *Tr.* at 26.

## V. DISCUSSION

Ms. Navarro argues that the ALJ erred in that: (1) [t]ne ALJ has failed to evaluate Plaintiff's impairments "in combination" for Step 3 "Listing" purposes; (2) Plaintiff has been prejudiced by Defendant's failure to properly implement or enforce his subpoena, and (3) Defendant concedes that Plaintiff has met her *prima facie* burdens at Step 4, but Defendant fails to satisfy his "strict" rebuttal burden at Step 5. *Tr.* at 3-8.

Based on the record before me, in light of Defendant's failure to properly implement or enforce his subpoena, I do not find sufficient evidence of record to support the Commissioner's decision that Ms. Navarro is not disabled and conclude that a remand is required.

At the hearing held on January 7, 2008, Plaintiff's counsel informed the ALJ that he was having a difficult time getting Ms. Navarro's therapy records and that he may ask for a subpoena.

> ALJ: Do you have any objections to any of the exhibits?
>
> ATTY: Well, I have my concerns. The state agency checklist, obviously, which were based on almost no evidence whatsoever. We submitted significant evidence since that, including the treating psych records from APM [phonetic] for 2005 and 2006, as well as a few updates on the current psych source, Northwestern. The – as to the latter, Your Honor, as I mentioned to you before the hearing, there have been some problems getting records there. We did get a few records from them. Some psychiatric reports. The holdup was, they – we were informed that a building fell on the clinic, and therefore the

7

> clinic was closed for many days. They didn't have access to the records. We still don't have the therapy records. We're basically fighting with the clinic over that as to whether or not they're willing to release those. . . .
>
> . . . . .
>
> ALJ: Okay. And you're still trying to get records from Northwestern?
>
> ATTY: The only additional things we need from – we'd like to get those therapy records.
>
> ALJ: Yes.
>
> ATTY: They – we had a hard time getting them to release the psychiatric stuff that we sent in last week. They haven't specifically refused to submit the therapy records yet. They're kind of relying on this accident of the building falling on the clinic. But we will let you know within the next week if they're going to be resistant to that as well. We may ask for a subpoena.
>
> ALJ: Okay. So I'll keep the record open, I'll say a week.

*Tr.* at 55, 97. Two days later, Plaintiff's counsel communicated to the ALJ that Northwestern Human Services of Philadelphia would not submit any additional treatment materials, particularly the psychotherapy records, to counsel. *See* Plaintiff's Brief, Exhibit B. Asserting that the requested records were "otherwise unavailable" and of "potentially critical significance to a fair resolution of the issues in this case", counsel asked that the ALJ issue a subpoena for the therapy records, and the ALJ did so. *See* Plaintiff's Brief, Exhibits B and C. Upon subsequent inquiry to the ALJ's staff, Plaintiff's counsel learned that the subpoena had not been honored. Consequently, he contacted the ALJ and requested that he enforce the subpoena or authorize Plaintiff's counsel to seek federal court enforcement. *See* Plaintiff's Brief, Exhibit D. He received no response from the ALJ. *Tr.* at 341.

> The Third Circuit has recognized the broad discretion conferred upon the ALJ to decide whether or not to issue a subpoena (*see eg. Torres v. Barnhart*, 139 F.App'x 411, 414 (3d Cir. 2005) ("[t]he ALJ correctly determined that a subpoena was not necessary for full

8

presentation of Claimant's case, and accordingly did not abuse her discretion in not granting Claimant's request to subpoena [the treating physician] to complete an assessment form")). However, the Third Circuit has not addressed the discretion afforded to an ALJ who must decide whether to enforce the subpoena initially found to be necessary for a full and fair development of the record, after noncompliance.

*Mack v. Astrue*, 2010 WL 571782 *6 (E.D.Pa. February 12, 2010). Nonetheless, I agree with the Honorable Stewart Dalzell that when an ALJ fails to enforce a subpoena that he has issued, "the ALJ should at least articulate his reasoning for declining to do so". *Id.* at *1.

As pointed out in *Treadwell v. Schweiker*, 698 F.2d 137 (2d Cir. 1983),

> The official handbook issued by the Social Security Administration's Office of Hearings and Appeals, . . . ,provides that where there is failure to obey a subpoena, the ALJ should proceed with the hearing, and then decide whether to request enforcement via the Administration's Office of General Counsel. In either event, the ALJ is expected to include a memorandum explaining his choice.

*Id.* at 141. The record does not reveal compliance with this procedure herein. "It is an elementary rule that the propriety of agency action must be evaluated on the basis of stated reasons. In the case of noncompliance with a subpoena, the agency has recognized the desirability of having the ALJ articulate the basis for concluding that enforcement is or is not necessary." *Id.* at 142. The ALJ failed to explain his decision to decline to seek to enforce the subpoena that he issued requiring Northwestern Human Services of Philadelphia to produce Ms. Navarro's mental health records (psychotherapy records) from 9/15/07 to present. Consequently, I recommend that this matter be remanded, at which time the ALJ either shall apply to the Court to enforce the subpoena and consider the records or articulate on the record why the requested records are not now reasonably necessary for the full presentation of Plaintiff's case.

## RECOMMENDATION

It is recommended that Plaintiff's Motion in Support of Request for Review be GRANTED, and that this matter be REMANDED to the Commissioner for further proceedings consistent with this Report and Recommendation.

 S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
Robert N.C. Nix, Sr. Federal Building, Suite 211
900 Market Street
PHILADELPHIA, PENNSYLVANIA 19107-4228

Chambers of
M. FAITH ANGELLP: (215) 597-6079
United States Magistrate JudgeF: (215) 580-2165

*FAX / MAIL COVER SHEET*

**CASE NO. 09-1788****DISTRICT COURT JUDGE:** EVL
215-580-2142

**TODAY'S DATE**: March 25, 2010**LAW CLERK'S INITIALS**: LFS

<u>**VIA FAX:**</u>

Eric J. Fischer, Esq.215-576-5980
Dina W. Griffin, Esq./Eda Giusti, Esq.215-597-4753